UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL COALITION TO SAVE
OUR MALL, et al.,

Plaintiffs,

v.                                               Civil Action 00-2371 (HHK)

GALE NORTON, Secretary of the
Interior, et al.,

Defendants.

FILED

AUG 1 6 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**

On May 25, 1993, Congress authorized the construction of a memorial in the District of Columbia to honor members of the Armed Forces who served during World War II and to commemorate the United States' participation in that war. See Pub. L. 103-32, 107 Stat. 90, 91 (1993). The act empowered the American Battle Monuments Commission ("ABMC"), in connection with a newly-created World War II Memorial Advisory Board, to select a location for the WWII Memorial, develop its design, and raise private funds to support its construction. On October 25, 1994, Congress approved the location of the WWII Memorial in "Area 1" of the District, which generally encompasses the National Mall and adjacent federal land. See Pub. L. 103-422, 108 Stat. 4356 (1994). The ABMC reviewed seven potential sites within Area I and endorsed the Rainbow Pool site at the east end of the Reflecting Pool between the Lincoln Memorial and the Washington Monument as the final location for the WWII Memorial.[1] Finally,

---

[1] Out of the seven sites examined, the ABMC originally selected the Constitution Gardens area (between Constitution Avenue and the Rainbow Pool) as the location for the WWII Memorial, but later decided to endorse the present Rainbow Pool site.

in May, 200 , Congress passed new legislation directing the expeditious construction of the WWII Memorial at the selected Rainbow Pool site. See Pub. L. 107-11, 115 Stat. 19 (2001) (hereinafter "Pub. L. 107-11").

The National Coalition to Save Our Mall, World War II Veterans to Save the Mall, Committee of 100 on the Federal City, and District of Columbia Preservation League (hereinafter "plaintiffs") filed this suit for declaratory and injunctive relief, challenging the actions of the United States Department of the Interior, National Parks Service, Commission of Fine Arts, National Capital Planning Commission, and the American Battle Monuments Commission (hereinafter "defendants") in approving the design and location of the WWII Memorial at the historic Rainbow Pool site in the District. Before the court is defendants' motion to vacate the stay of this case imposed on March 13, 2001, and to dismiss. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that defendants' motion to dismiss must be granted because the court lacks subject matter jurisdiction over plaintiffs' claims.

## I.   BACKGROUND

Plaintiffs allege that defendants violated the Commemorative Works Act ("CWA"), 40 U.S.C. § 1001 et seq., National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(2)(C), National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f et seq., and the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. II, § 10(a), in approving the proposed WWII Memorial. Plaintiffs filed a motion for a preliminary injunction on February 15, 2001, and applied for a temporary restraining order ("TRO") on March 8, 2001. At the conclusion of the hearing on plaintiffs' TRO application, the court granted the request, temporarily enjoining defendants from

"undertaking any activities to remove or prune trees in connection with the construction of the WWII Memorial at the Rainbow Pool Site on the Washington Mall." National Coalition to Save Our Mall, et al., v. Norton, et al., No. 00-2371 (HHK) (D.D.C. March 8, 2001) (order granting temporary restraining order). The next day defendants filed an unopposed motion to stay the proceedings in this case because "[a] question [had arisen] about the validity of certain NCPC [National Capital Planning Commission] decisions related to the Memorial." Defs.' Mot. to Stay Proceedings and Suspend Scheduling Order ¶ 2 (filed March 9, 2001). At issue was the legitimacy of several votes that former NCPC Chairman Harvey B. Gantt had cast after his term as chairman had expired on January 1, 1999. Defendants' motion to stay proceedings was granted.

On May 28, 2001, the President signed into law legislation directing the expeditious construction of the WWII Memorial at the Rainbow Pool site in the District of Columbia. See Pub. L. 107-11, § 1. The legislation states in its entirety:

SECTION 1. APPROVAL OF WWII MEMORIAL SITE AND DESIGN.

Notwithstanding any other provision of law, the World War II memorial described in plans approved by the Commission of Fine Arts on July 20, 2000 and November 16, 2000, and selected by the National Capital Planning Commission on September 21, 2000 and December 14, 2000, and in accordance with the special use permit issued by the Secretary of the Interior on January 23, 2001, and numbered NCR-NACC-5700-0103, shall be constructed expeditiously at the dedicated Rainbow Pool site in the District of Columbia in a manner consistent with such plans and permits, subject to design modifications, if any, approved in accordance with applicable laws and regulations.

SECTION. 2. APPLICATION OF COMMEMORATIVE WORKS ACT.

Elements of the memorial design and construction not approved as of the date of enactment of this Act shall be considered and approved in accordance with the requirements of the Commemorative Works Act (40 U.S.C. 1001 et seq.).

SECTION. 3. JUDICIAL REVIEW.

The decision to locate the memorial at the Rainbow Pool site in the District of Columbia and the actions by the Commission of Fine Arts on July 20, 2000 and November 16, 2000, the actions by the National Capital Planning Commission on September 21, 2000 and December 14, 2000, and the issuance of the special use permit identified in section 1 shall not be subject to judicial review.

Pub. L. 107-11. Contending that Public Law 107-11 precludes judicial review of all administrative decisions concerning the location and design of the WWII Memorial, defendants filed the present motion to vacate the court's stay and dismiss this suit for lack of jurisdiction.[2]

## II.    ANALYSIS

Defendants move to dismiss on the grounds that Public Law 107-11 expresses Congress' clear intent to preclude judicial review over the various administrative decisions that are the subject of this suit. While apparently conceding that the new legislation -- if constitutional -- essentially withdraws this court's jurisdiction over most of their claims,[3] plaintiffs maintain that

---

[2]    Before responding to defendants' motion to vacate the stay and dismiss, plaintiffs filed a second application for a temporary restraining order on June 4, 2001. Plaintiffs sought to enjoin defendants from executing certain contracts necessary to begin construction of the WWII Memorial. The court held a hearing on plaintiffs' second TRO application on June 6, 2001, and denied the motion in a bench ruling the following day. In its ruling, the court held inter alia that plaintiffs had failed to show that they would suffer irreparable injury if the requested TRO were not granted and that they were substantially likely to prevail on the merits of the case -- particularly, in light of Public Law 107-11. The court also emphasized that it was making only a preliminary ruling on whether Public Law 107-11 deprives this court of subject matter jurisdiction over plaintiffs' claims. See National Coalition to Save Our Mall, et al., v. Norton, et al., No. 00-2371 (HHK) (D.D.C. June 7, 2001) (order denying second application for a temporary restraining order).

[3]    For example, in both their second TRO application and opposition to defendants' motion to dismiss, plaintiffs focus almost exclusively on their argument that the court retains jurisdiction over their NEPA claims. Except when arguing that the new legislation unconstitutionally encroaches upon this court's Article III authority or violates equal protection principles, plaintiffs

this court still has jurisdiction over their claims arising under NEPA. First, plaintiffs note that Public Law 107-11 does not mention the National Park Service's decision to forego preparation of an Environmental Impact Statement ("EIS"). Given this fact, plaintiffs suggest that Public Law 107-11 does not repeal, either expressly or by implication, NEPA's applicability to the WWII Memorial. Second, plaintiffs argue that the new legislation violates separation of powers principles by unconstitutionally encroaching on this court's Article III powers. Plaintiffs maintain that Congress has used the new legislation essentially to tell this court how it should rule in this case. Finally, in an argument presented for the time in their opposition papers, plaintiffs contend that "any construction of Public Law 107-11 as exempting the WWII Memorial from NEPA would violate the Equal Protection Clause of the Fifth Amendment by denying to District of Columbia citizens the full environmental disclosures accorded to citizens in the 50 states." Pls.' Opp'n at 20 (capitalization omitted).

### A.  APA Review

Plaintiffs bring this suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Under the APA, any person "adversely affected or aggrieved" by agency action is entitled to judicial review as long as the agency action is final and there is no other available remedy. Heckler v. Chaney, 470 U.S. 821, 828 (1985) (citing 5 U.S.C. §§ 701, 706). However, this grant of judicial review is limited to the extent that a federal statute "preclude[s] judicial review" or the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1) and (2). The

---

appear to abandon the notion that this court can review defendants' determinations regarding the final design and location of the WWII Memorial at the Rainbow Pool site. See Pls.' Second Application for a TRO at 4-12; Pls.' Opp'n to Defs.' Mot. to Dismiss at 14-20 ("Pls.' Opp'n").

Supreme Court has held that "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block v. Community Nutrition Institute, 467 U.S. 340, 345 (1984). See also Southern Railroad Co. v. Seaboard Allied Mining Corp., 442 U.S. 444, 454-55 (1979); Morris v. Gressette, 432 U.S. 491, 499 (1977). The Court has also held that there must be "clear and convincing evidence" of legislative intent before courts will restrict access to judicial review. Abbott Laboratories v. Gardner, 387 U.S. 136, 140-41 (1967).

Here the plain language of Public Law 107-11 provides clear and convincing evidence that Congress intended to preclude court review of those agency decisions concerning the location and design of the WWII Memorial. In clear and unambiguous language, Public Law 107-11 states that the "decision to locate the memorial at the Rainbow Pool site" and the "actions by the Commission of Fine Arts . . . [,] the National Capital Planning Commission . . . , and the issuance of the special use permit [by the Secretary of the Interior] . . . shall not be subject to judicial review." Pub. L. 107-11, § 3. The legislation also notes that any elements of the memorial design not already approved "shall be considered and approved in accordance with the requirements of the CWA." Pub. L. 107-11, § 2. There appears to be no room within this language to support the notion that the court maintains jurisdiction to review the location and design of the WWII Memorial. Indeed, as this court previously stated, it is difficult to imagine a clearer expression of Congress' intention to preclude judicial review of these agency decisions.

If such plain language were not enough, the legislative history of Public Law 107-11 provides strong support for defendants' position that Congress intended to preclude all judicial

review in this case. During the floor debate on Senate Amendment No. 745, the revised bill that eventually became Public Law 107-11, legislation co-sponsor Senator Stevens of Alaska stated:

> Eight years after Congress authorized the construction of this memorial, and six years from the first of 22 public hearings on its site and design, the memorial's construction remains delayed by a procedural issue involving the National Capital Planning Commission (NCPC), one of the agencies required by law to approve the memorial, and a **lawsuit filed by a small group of opponents**. This legislation would remove those obstacles and require the construction process to promptly go forward.
>
> The legislation accomplishes that goal as follows:
>
> Through sections one and three, the site and design for the World War II Memorial are finalized, expeditious construction is directed, and **the prospect of further delay through judicial challenges or other re-considerations of the selected site and design are eliminated.**

147 Cong. Rec. S5261 (May 21, 2001) (emphasis added). In the House of Representatives, Representative Stump of Arizona, one of the original sponsors of the legislation, echoed a similar sentiment:

> The compromise language [of Senate Amendment No. 745] accomplishes our objectives of declaring the major design elements to be approved by Congress and finalized, thus bringing the bureaucratic delay to an end, and **rendering moot the current litigation brought by the memorial's opponents.**

147 Cong. Rec. H2391 (May 22, 2001) (emphasis added).

Despite this clear legislative history (and equally clear text), plaintiffs continue to argue that this court retains jurisdiction to entertain their suit. Plaintiffs are quick to emphasize that there is a strong presumption favoring judicial review of administrative action. See Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670 (1986); see also Abbott Laboratories v. Gardner, 387 U.S. 136, 140 (1967) (noting that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the

purpose of Congress"). While plaintiffs are correct about this general principle, "[t]he presumption favoring judicial review of administrative action is just that -- a presumption. This presumption, like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." Block v. Community Nutrition Institute, 467 U.S. 340, 349 (1984). Here, as indicated above, the specific language and specific legislative history of Public Law 107-11 compel the conclusion that Congress intended for its new law to moot this litigation and preclude all judicial review of the WWII Memorial design and location.

### B.    NEPA Arguments

Recognizing the substantial jurisdictional hurdle they face, plaintiffs refine their argument averring that Public Law 107-11 does not remove this court's jurisdiction over their specific NEPA claims because the legislation does not mention the National Park Service's decision to forego preparation of an environmental impact study ("EIS"). This argument fails for several reasons. First, as an initial matter, NEPA does not provide a separate cause of action for plaintiffs seeking to enforce its EIS requirements. See Florida Audubon Soc. v. Bentsen, 94 F.3d 658, 665 (D.C. Cir. 1996). In order to raise a NEPA claim, aggrieved plaintiffs must bring their NEPA allegations under a separate statutory scheme -- most typically, the APA. See Lujan v. National Wildlife Federation, 497 U.S. 871, 882-83 (1990). Here plaintiffs' NEPA claims cannot survive unless the court maintains jurisdiction over this suit under a broader statutory scheme like the APA. Yet, as the court has already indicated, Public Law 107-11 expresses Congress' clear intent

to preclude judicial review over defendants' final actions, thereby precluding all APA review in this case. See 5 U.S.C. § 701(a)(1) (noting that there is no review of final agency action under the APA if the relevant statute "preclude[s] judicial review"). Given that the court does not have jurisdiction under the APA to entertain plaintiffs' claims, the court also does not have jurisdiction under NEPA to review plaintiffs' specific NEPA arguments.

Second, the overall purpose of NEPA suggests that this court should not entertain plaintiffs' suit. As the Supreme Court has stated, NEPA is designed to ensure that federal agencies are fully aware of the environmental effects of proposed agency action <u>before</u> such final action is taken. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 371-72 (1989). NEPA imposes only procedural requirements that are preliminary to final agency action. See id. at 371. Here, plaintiffs allege that defendants violated NEPA through their arbitrary and capricious decision not to prepare an environmental impact statement ("EIS") for the WWII Memorial. But given the preliminary nature of NEPA and its procedural (as opposed to substantive) role in influencing final agency action, it is unclear what import such an EIS would have now given that the agency decisions concerning the design and location of the WWII Memorial are final and not subject to judicial review. Indeed, basic reasoning suggests that if a final agency decision is unreviewable, then those preliminary decisions -- solely intended to influence decision-makers about their final course of action -- are not subject to judicial review either.

Plaintiffs seek to overcome this quandary by arguing that the design and location of the WWII Memorial are really not final because Public Law 107-11 makes allowances for "design modifications." Pub. L. 107-11, § 1. Because the legislation allows for such changes, plaintiffs

contend, the court has the authority to require defendants to perform an EIS, if the court finds that such action is required. The main problem with this argument is that plaintiffs are reading the phrase "design modifications" much more broadly than Congress intended. Again, the legislative history provides clear guidance on this issue. Public Law 107-11 co-sponsor Senator Stevens noted during Senate debate that

> **Section one [of the Amendment] also includes a provision regarding design modifications which is solely intended to address the highly unlikely event that a technical impossibility could occur in the course of construction that might require a limited deviation from the selected design.** In light of the careful review the existing plans have already been subject to by the memorial's design, engineering, and construction management professionals, the General Services Administration (GSA), the American Battle Monuments Commission (ABMC), the National Park Service (NPS), the Commission of Fine Arts (CFA) and the National Capital Planning Commission (NCPC), **no exercise of this authority is expected.**

147 Cong. Rec. S5261 (May 21, 2001) (emphasis added). Such legislative history compels the conclusion that Congress did not intend its allowance for "design modifications" to include substantial changes to the location and design of the WWII Memorial, as plaintiffs' ultimately desire. Rather, the modifications were intended to address only "the highly unlikely event that a technical impossibility could occur in the course of construction that might require a limited deviation from the selected design." See id. (emphasis added).[4]

The third reason this court lacks jurisdiction over plaintiffs' NEPA claims is because the

---

[4] The comments of Senator Kerry of Massachusetts, cited by plaintiffs, are also not to the contrary. Though not a co-sponsor of the legislation, Senator Kerry stated that the legislation's allowance for "design modifications" will ensure "that the memorial respects the open, historic character of the Mall, that significant vistas are not obstructed, and that the height and mass of this memorial are appropriate for the site." 147 Cong. Rec. S 5262 (May 21, 2001). In any event, such technical changes to the memorial's design (and not its location) would be quite different from the broader changes advocated by plaintiffs.

express language of Public Law 107-11 commands that the WWII Memorial shall be constructed expeditiously "notwithstanding any other provision of law." Pub. L. 107-11, § 1. Our Court of Appeals has interpreted similar "notwithstanding" clauses to indicate that the new federal statute "supercedes" or "trumps" other statutes that are inconsistent. See, e.g., Liberty Maritime Corp. v. United States, 928 F.2d 413, 416 (D.C. Cir. 1991) (noting that the 'notwithstanding' clause in the Merchant Marine Act "supercede[s] all other laws"); Saco River Cellular, Inc. v. Federal Communications Comm., 133 F.3d 25, 30 (D.C. Cir. 1998) (noting that a 'notwithstanding' clause in the Paperwork Reduction Act "simply trumps" other statutes). Indeed, it is hard to imagine how Congress could have more clearly expressed its intention that the WWII Memorial be built "notwithstanding" any other law -- including those preliminary requirements under NEPA. See Illinois Nat'l Guard v. Federal Labor Relations Auth., 854 F.2d 1396, 1403 (D.C. Cir. 1988) (noting that the "notwithstanding language of the statute really could not be clearer").

Plaintiffs respond that the "notwithstanding" clause in Public Law 107-11 does not indicate whether Congress intended to repeal NEPA's applicability to the WWII Memorial unless there is an "irreconcilable conflict" between the new legislation and NEPA. See Pls.' Opp'n at 15 (citing In re Glacier Bay, 944 F.2d 577 (9th Cir. 1991)). See also Flint Ridge Development Co. v. Scenic Rivers Ass'n, 426 U.S. 776, 785-93 (1976) (noting that a clear conflict must be found before NEPA gives way to substantive legislation); Izaak Walton League of America v. Marsh, 655 F.2d 346, 367 (D.C. Cir.) (same), cert. denied, 454 U.S. 1092 (1981). Here there is an irreconcilable conflict between requiring defendants to perform a preliminary EIS under NEPA when the ultimate decision, for which the EIS is designed to influence, is final and not subject to judicial review. There is also an irreconcilable conflict between Public Law 107-11's direction

that the WWII Memorial be built expeditiously and this court's holding, what is likely to be, lengthy proceedings to determine whether defendants were arbitrary and capricious in not preparing an EIS. The memorial construction would be further delayed if this court were to remand the case back to the multiple federal agencies involved so that they could revisit whether to perform the EIS. As the legislative history indicates, Congress intended through Public Law 107-11 to end this lawsuit and prevent any such further delays. See 147 Cong. Rec. S5261 (May 21, 2001) (Senator Stevens) ("[T]he prospect of further delay through judicial challenges or other re-considerations of the selected site and design are eliminated.").

C.   **Constitutional Arguments**

Plaintiffs next raise two constitutional challenges to Public Law 107-11. Plaintiffs first contend that the new legislation violates the separation of powers principle articulated in United States v. Klein, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871). In Klein, the executor of a Confederate estate sought to recover the value of property seized by the United States during the Civil War, which by statute was recoverable if the executor could demonstrate that the land owner had not "given any aid or comfort" to the rebellion. Id. at 131. The Supreme Court had previously held in United States v. Padelford, 9 Wall. 531, 542-43, 19 L.Ed. 788 (1869), that a Presidential pardon satisfied this burden of proving that no such aid or comfort had been given. While the Klein case was pending, however, Congress enacted a new statute providing that a pardon would instead be taken as proof that the pardoned individual had in fact aided the enemy, and if the claimant offered proof of a pardon the court must dismiss the case for lack of jurisdiction. See Klein, 13 Wall. at 133-34. The Supreme Court in Klein found this new statute

unconstitutional because it sought to "prescribe rules of decision to the Judicial Department of the government in cases pending before it." Id. at 146.[5] More recently, the Court has interpreted Klein to stand for the proposition that Congress may not dictate the ultimate decision in a case, which is pending before an Article III court. See United States v. Sioux Nation of Indians, 448 U.S. 371, 404-05 (1980). Here plaintiffs argue that Public Law 107-11 does just that by dictating to this court how it should rule in this pending case. This claim is without merit.

As this court said at the hearing on plaintiffs' second application for a TRO, there is an important difference between Congress telling this court how it should decide a particular case (expressly prohibited by Klein) and Congress withdrawing jurisdiction to decide a particular case (the situation here). With Public Law 107-11, Congress has merely exercised its authority under the APA to dictate what agency decisions are subject to judicial review. See Block v. Community Nutrition Institute, 467 U.S. 340, 345-46 (1984) (holding that an agency action is not reviewable under the APA if the statute precludes judicial review); Heckler v. Chaney, 470 U.S. 821, 828 (1985) (same). There is no Klein separation of powers problem here because Congress has not mandated that this court make a particular finding of fact or conclusion of law with respect to plaintiffs' claims. Moreover, unlike in Klein, Congress here has not tried to use its authority to force the court to rule in favor of the government.[6] Neither has Congress violated other

---

[5] See also Miller v. French, 530 U.S. 327, 348-50 (2000) (detailing background of Klein and finding no separation of powers issue where a new statute "simply imposes the consequences of the court's application of the new legal standard").

[6] Plaintiffs reason that by precluding judicial review, Congress has effectively forced this court to rule in favor of the government because a dismissal of this suit for lack of jurisdiction has the same practical effect for the government as a judgment on the merits. While plaintiffs are correct that they will not prevail under either scenario, this reality does not mean that defendants have somehow received a favorable judgment on the merits. With the passage of Public Law 107-

separation of powers principles, such as vesting review of this court's decision in the hands of the Executive Branch, see Hayburn's Case, 2 Dall. 408 (1792), or reopening a final judgment of this court, see Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 225-26 (1995).

Plaintiffs make a second constitutional argument contending that any construction of Public Law 107-11 that exempts the WWII Memorial from NEPA would violate implicit Fifth Amendment equal protection principles by denying District of Columbia citizens the full environmental disclosures accorded to citizens of the 50 states. For support, plaintiffs rely on D.C. Federation of Civic Associations, Inc. v. Volpe, 434 F.2d 436 (D.C. Cir. 1970). In Volpe, various citizen groups sued federal and District of Columbia officials to enjoin the construction of a proposed bridge and federal highways in the District. The suit followed the enactment of Section 23 of the Federal-Aid Highway Act of 1968 ("Section 23"), which directed the District government and the Secretary of Transportation to begin work on such projects not later than 30 days after the date of the statute. The legislation also required the construction to be conducted in accordance with all applicable provisions of Title 23.[7] The central issue in Volpe then was whether Congress intended Section 23's direction that construction begin within 30 days to repeal the pre-construction requirements mandated by Title 23. See id. at 444-47. The Court of Appeals held that the pre-construction requirements of Title 23 were not repealed and that the defendants must comply with these laws before actual construction could begin. See id. at 447

---

11, this court will not decide (and the parties will never know) whether defendants were arbitrary and capricious in approving the WWII Memorial design and location.

[7] Title 23 includes several pre-construction requirements that must be met before any federal highways are built. These requirements include holding public hearings as to the design and location of any proposed project and considering the economic and social effects of the project's location and impact on the environment. See 23 U.S.C. § 128(a).

(Wright, J.); see id. at 448 (Bazelon, J., concurring).

While the above holding formed Part II of the court's decision, plaintiffs rely on dicta from Judge Wright's opinion in Part I, in which Judge Wright discussed whether the defendants' interpretation of Section 23 as to deny District of Columbia residents of Title 23's pre-construction requirements would violate equal protection principles. Judge Wright stated:

> The net effect of Section 23, construed as [defendants] insist it must be, is to divide citizens of the United States affected by road projects into two classes. One small group of citizens, the residents of the District of Columbia who will be affected by the Three Sisters Bridge, is deprived of these important rights to participate in planning the future of the community. The other class, consisting of all residents of the 50 states, still retains these federally guaranteed rights to influence all federally assisted road building. On its face, therefore, appellees' interpretation of Section 23 would result in discrimination between the District residents affected by the Bridge and all other residents of the United States affected by highway projects in their localities.

Volpe, 434 F.2d at 439. Relying solely on this dicta, plaintiffs argue that by removing NEPA requirements over the WWII Memorial, Congress has deprived District residents of procedural rights otherwise afforded to citizens of the 50 States.

The first problem with this argument is that it is unclear whether District of Columbia residents even have such an equal protection right to NEPA procedures. The portion of Judge Wright's decision that plaintiffs cite was not joined by any other judge of the appellate panel. As dicta, this language does not constitute the circuit panel's opinion and does not have precedential effect. See, e.g., Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 876 (D.C. Cir. 1992) ("[C]ircuit precedent is generally established by the majority vote of three circuit judges); Gersman v. Group Health Assoc., Inc., 975 F.2d 886, 897 (D.C. Cir. 1992) ("Binding circuit law comes only from the holdings of a prior panel, not from its dicta."), cert. denied, 511

U.S. 1068 (1994). However, even if such an equal protection right existed under Volpe,[8] the facts of the present case are readily distinguishable from the facts there. Most significantly, the statute at issue in Volpe would have denied District residents of all pre-construction benefits concerning all remaining interstate highways within the District. This broad preclusion is not present here   Public Law 107-11 does not repeal NEPA requirements for all federal projects built in the District, but effectively does so only for the WWII Memorial. Furthermore, while Volpe involved the taking of District of Columbia parks and land to build federal projects, the WWII Memorial would reside on current federal land, over which Congress has broad and unlimited control under the Property Clause. See U.S. Const. art. IV, § 3, cl. 2 ("Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."); see also Kleppe v. New Mexico, 426 U.S. 529, 539 (1976) (noting that "the power over the public land thus entrusted to Congress is without limitations")

The second problem with plaintiffs' equal protection argument is that Public Law 107-11 does not specifically discriminate against District of Columbia residents or take away rights enjoyed by other citizens. Concerning equal protection analysis, the Supreme Court has stated that "[t]he equal protection component of the Fifth Amendment prohibits only purposeful discrimination, and when a facially neutral federal statute is challenged on equal protection grounds, it is incumbent upon the challenger to prove that Congress selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects

---

[8]   The parties have not cited (and the court's own research has not revealed) any case in which a court has held that such an equal protection right exists with respect to federal projects built on federal land.

upon an identifiable group." Harris v. McRae, 448 U.S. 297, 323, n. 26 (1980) (internal citations omitted). Here there is no reason to believe (and plaintiffs have not alleged) that Congress passed Public Law 107-11 in some attempt to discriminate against District of Columbia citizens. Congress has often exempted state-specific projects from generally applicable federal laws. See, e.g., Sequoyah v. Tennessee Valley Auth., 480 F. Supp. 608, 611-12 (E.D. Tenn. 1979) (finding that Congress exempted certain projects of the Tennessee Valley Authority from the Endangered Species Act), aff'd, 620 F.2d 1159 (6th Cir.), cert. denied, 449 U.S. 953 (1980); Friends of the Earth, Inc. v. Weinberger, 562 F. Supp. 265, 270 (D.D.C. 1983), appeal dismissed without opinion, 725 F.2d 125 (D.C. Cir. 1984) ("To be sure, Congress can and does exempt projects from NEPA") (citing Flint Ridge Development Co. v. Scenic Rivers Assoc. of Oklahoma, 426 U.S. 776, 788 (1976); Izaak Walton League of American v. Marsh, 655 F.2d 346, 367-68 (D.C. Cir.), cert. denied sub. nom., Atchison, Topeka and Santa Fe R.R., 454 U.S. 1092 (1981)).[9]

Moreover, at least one appellate court has held that there is no equal protection violation where Congress exempts a federal project in one state from otherwise applicable environmental compliance requirements such as NEPA. See Stop H-3 Ass'n v. Dole, 870 F.2d 1419 (9th Cir. 1989). In Stop H-3 Ass'n, plaintiffs challenged congressional legislation that ordered the Secretary of Transportation and Hawaii government officials to approve construction of a controversial interstate highway project in Hawaii. The legislation at issue, Public Law 99-591 or "Section 114," specifically stated that the highways should be approved "notwithstanding" other

---

[9] Congress has also removed a federal court's jurisdiction over such projects. See Bald Eagle Ridge Protection Assoc. v. Mallory, 119 F. Supp. 2d 473, 481-84 (M.D. Pa. 2000) (finding that Congress precluded judicial review over administrative action that involved a new interstate highway in Pennsylvania).

federal, state, and local laws. See id. at 1423. Like plaintiffs here, the plaintiffs in Stop H-3 Ass'n raised an equal protection challenge, arguing inter alia that the new law created an arbitrary classification by denying Hawaii residents the full environmental protections afforded by NEPA and other applicable laws. The Ninth Circuit squarely rejected this view:

> We do not accept appellants' analysis. First, section 114 does not, as appellants believe, rest on a legislative distinction between Hawaii and the other 49 states. Section 114 by its terms refers only to the H-3 project. The statute does not exempt all federal highway construction projects in Hawaii from the requirements of section 4(f); rather, it exempts one project located in Hawaii from the 4(f) statutes. Even when we look beyond its terms to its effect, section 114 does not affect the state of Hawaii as a whole, to the exclusion of the rest of the nation. Instead, the effects of section 114 will be felt by any United States citizen whose use and enjoyment of Hawaii's environment is affected by H-3, regardless of that person's state of residence. Thus in depicting citizens of Hawaii as a disadvantaged "class" for purposes of equal protection analysis, appellants include people who will not be affected by construction of H-3, and overlook others who will. In short, it cannot be said that section 114 rests on a state-based classification simply because it refers to a project located in Hawaii.

Id. at 1431. This court is persuaded by the Ninth Circuit's analysis in Stop H-3 Ass'n and finds that such reasoning applies with equal force here. Indeed, Public Law 107-11's effect on District of Columbia residents does not appear to be to the exclusion of the rest of the nation. Citizens from all 50 states will visit the completed WWII Memorial, and any adverse effects from the alleged destruction of "significant vistas between the Reflecting and Rainbow Pools and the Washington Monument" will presumably affect all visiting guests. Compl. ¶ 5. Moreover, the alleged environmental harms of which plaintiffs complain will certainly affect the citizens of those states bordering the District and the Potomac River.

### III. CONCLUSION

For the foregoing reasons, the court grants defendants' motion to vacate the court's previous stay and to dismiss all claims in this suit. An appropriate order accompanies this memorandum opinion.

Date: 8/16/01

Henry H. Kennedy, Jr.
United States District Judge